**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **ABRAMS LEARNING AND** | * | **Case No. 19-10725-KHK** |
| **INFORMATION SYSTEMS, INC.,** | * | Chapter 11 |
| | * | |
| Debtor. | * | |

**DEBTOR'S MOTION TO APPROVE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS UNDER 11 U.S.C. §§ 105, 363, AND 365 ON AN EXPEDITED BASIS**

Abrams Learning and Information Systems, Inc., (the "**Debtor**" or "**ALIS**") has entered into an agreement, subject to approval by this Court, to sell its assets, including its primary contract assets, to Gotham Government Services, LLC ("**Gotham**" or the "**Purchaser**"). In furtherance of that agreement, ALIS files this motion seeking authority to sell its assets pursuant to the highest and best offer received (the "**Motion**"). The terms of the sale contemplated by this Motion are subject to this Court's approval and may be modified up to the date of the hearing on the Motion. The Debtor may obtain bids or preliminary sale agreements prior to the hearing, subject to higher or better offers being made on the date of the hearing, and may also sell less than all of the available assets if such a sale is determined to be the highest and best offer. The Motion is filed pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Rules 4001, 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). In support of this Motion, the Debtor represents as follows:

---

**ALEXANDER M. LAUGHLIN (VSB No. 25237)**
**BRADLEY D. JONES (VSB No. 85095)**
**ODIN FELDMAN & PITTLEMAN PC**
**1775 Wiehle Avenue, Suite 400**
**Reston, Virginia 20190**
**Laughlin: 703-218-2134**
**Jones:    703 218-2176**
**Fax:     703-218-2160**
**Email:   alex.laughlin@ofplaw.com**
**Email:   Brad.Jones@ofplaw.com**

*Counsel for the Debtor and Debtor-in-Possession*

## FACTUAL SUMMARY

1. The Debtor is a consulting firm that is a recognized leader in developing and delivering training, planning, and doctrine programs for government clients in homeland security, emergency management, military, academia, and other commercial enterprise platforms.

2. The Debtor was founded in 2004 and is a Virginia Corporation headquartered in Annandale, Virginia.

3. As of the most recent monthly operating report, the Debtor employs 18 employees and independent contractors. Dkt. No. 120 at 4.

4. The primary assets of the Debtor are its executory contracts. ALIS is a prime contractor on four government contracts, primarily with the Department of Veterans Affairs and the United States Army all as more fully set forth in the "Asset Purchase Agreement" as defined below (the "**APA Contracts**").

5. ALIS has no secured creditors. Dkt. No. 41 at 7.

6. On December 14, 2019, ALIS entered into an asset purchase agreement (the "**Asset Purchase Agreement**") with Gotham for the sale of the APA Contracts. A copy of the Asset Purchase Agreement is attached hereto as **Exhibit A**.

7. Under the Asset Purchase Agreement, in addition to the APA Contracts, Gotham would acquire ALIS's intellectual property and a license to use ALIS's names and certain other trademarks for a five year period beginning on the closing date. Gotham would acquire ALIS's rights to perform and collect on the Debtor's contracts in the name of ALIS, and the fixed assets of the Debtor hereinafter referred to as the "**APA Sale Assets**."

8. The purchase price set forth in the Asset Purchase Agreement is $200,000.00. To

complete the sale, Gotham has escrowed earnest money in the amount of $50,000.00, which is being held in the Trust Account of Odin, Feldman & Pittleman, P.C., the Debtor's law firm.

9. The Debtor has undertaken efforts since the beginning of this case to obtain an offer for the APA Sale Assets. Prior to receiving the current offer from Gotham, the Debtor has received inquiries from several potential purchasers, executed non-disclosure agreements, and entered into negotiations for the sale of its contract assets. However, none of these prior sales efforts has resulted in a ratified contract that could be completed or that was on terms as favorable as the offer set forth in the Asset Purchase Agreement.

### TIME IS OF THE ESSENCE

10. The Purchaser has represented that it is unwilling to complete this transaction if closing does not occur before December 31, 2019 and a Court Order approving the proposed sale is not entered prior to that date.

11. The APA Sale Assets subject to the sale in the Asset Purchase Agreement decrease in value over time and a delay in finalizing the sale will result in reduced revenues available for collection under the APA Contracts, resulting in a lower purchase price and fewer funds available for creditors. Some of the APA Contracts are hours-based contracts, meaning the revenue is generated based on the numbers expended each month. Each month that passes decreases revenues by approximately 8%-10%.

12. In addition, onboarding the Debtor's employees and independent contractors to the purchaser currently assigned to the contracts will be significantly more difficult after January 1, 2020. The Debtor is currently waiting for four additional staff assigned to one of the APA Contracts to receive necessary security clearances to begin work. It is most advantageous for those contingent hires to begin work with the Purchaser. In addition, one of the contracts has an

annual Program Management Review meeting, which is mandated by the contractor. Planning for that meeting typically begins in February and the Purchaser will need sufficient time to prepare for that meeting, which necessitates the contract close before January 1, 2020. As a result, the Debtor seeks approval of this sale on an expedited basis.

13. Moreover, the completion of this sale will be necessary for determining the course of the Debtor's reorganization. Currently the Debtor has a deadline to file a plan and disclosure statement by January 1, 2020, that outcome of which will be determined by the results of this sales effort.

14. As a result, the inability to obtain approval of the sale before December 31, 2019 will cause immediate and irreparable injury to the Debtor and creditors of the bankruptcy estate.

### RELIEF REQUESTED

The Debtors request that the Court approve the sale of APA Assets under either the asset Purchase agreement, through a competing contract submitted before or on the hearing date, or as a result of any open auction this Court might conduct for the sale of the APA Assets Transferred.

**PROPERTY FOR SALE:** The Debtors are selling the APA Assets as set forth in the Asset Purchase Agreement and as set forth in **Exhibit B** attached hereto. The sale will not include cash, accounts receivable, or chapter 5 claims, unless otherwise agreed by the Debtors or ordered by the Court. Purchasers may purchase the Debtors' customer contracts, which will be assumed and assigned to the purchaser pursuant to 11 U.S.C. § 365. No other executory contracts or unexpired leases are being sold. The Debtor reserve the right to sell a portion of the assets to different purchasers or to sell less than all of the assets, provided the sale is determined to be the highest and best offer. The Debtor make no representation or warranty as to the identification, location, or physical condition of the assets, and the sale is intended to be "as is – where is". The

Debtor request authorization to complete a bill of sale post-closing and will prepare a closing memorandum with the Purchaser to report the amounts paid for the assets for tax purposes.

**TYPE OF SALE:** The sale will be a private sale. The sale will be subject to higher and better offers and require Court approval. The funds generated from the sale will be used to make payments to creditors in accordance with the Bankruptcy Code following prior approval by this Court.

**SALE PRICE:** The sale price for the APA Assets will be $200,000.00 in cash or cash equivalents be paid at closing.

**APPRAISAL VALUE:** No appraised value for APA Assets has been obtained the cost of any such appraisal is not warranted given the December 31, 2019 closing requirements and the cost of any such appraisal.

**CONTINGENCIES:** The sale of the APA Assets is contingent upon Court approval and the conditions specified in the Asset Purchase Agreement.

**TIME AND PLACE OF CLOSING:** Closing shall take place on or before December 31, 2019

**LIENS AND INTERESTS:** The Debtor has no scheduled secured debt, no creditors have file a proof of claim asserting any security rights, and the claims bar date has passed. The sale will be free and clear of any liens or other interests.

**ACTIONS TO CONSUMATE THE SALE:** The Debtors request authority to take all necessary and reasonable actions to consummate the sale consistent with this Motion.

**TAX CONSEQUENCES TO THE ESTATE:** The Debtor does not anticipate any tax consequences to the bankruptcy estate as a result of this sale. The Debtor is an S-Corporation whose taxable gains and losses are reflected on the tax return of its sole shareholder.

**WAIVER OF THE 14 DAY STAY:** The Debtor requests that the Court waive the 14day stay required by Bankruptcy Rule 6004(h) in order to expedite the closing on the sale of the APA Assets.

### APPLICABLE AUTHORITY

<u>BANKRUPTCY CODE § 363(b) AUTHORIZES THE SALE</u>

Section 363(b)(1) of the Bankruptcy Code provides that the Debtor "after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Here, the proposed sale represents the exercise of reasonable business judgment by the Debtors. *See In re Meredith*, No. 03-34018, 2005 WL 3763840, at *1 (Bankr. E.D. Va. Mar. 9, 2005) (finding that existence of a sound business reason justified approval of proposed sale); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (discussing the business judgment standard and § 363 in detail).

While the determination of what constitutes a prudent exercise of the Debtor's business judgment and a sufficient business reason depends on the facts and circumstances of each case. Debtors typically will satisfy the business judgment standard if the debtor "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the Debtor." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr.S.D.N.Y.1992). To determine whether the sale meets the business judgment standard, courts look to whether (i) there is a sound business reason for the sale; (ii) accurate and reasonable notice of the sale has been given; (iii) the sale will yield an adequate price (*i.e.*, one that is fair and reasonable), and (iv) the parties have acted in good faith. *See e.g.*, *In re Scimeca Found., Inc.*, 497 B.R. 753, 771-72 (Bankr. E.D. Pa. 2013); *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995) *citing In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220 (Bankr. N.D. Ohio 1994)*; Titusville Country Club v.*

*Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa.1991).

Here, the proposed sale conforms to this standard. The Debtor has made multiple efforts to sell its contracts to a purchaser, including engaging in significant discussions and exchanging a draft asset purchase agreement with a prior potential buyer that was not able to consummate the sale. The price represented by this proposed sale is, in the Debtor's view, the highest and best price reasonably likely to be obtained for its assets. The sale would avoid substantial risks for the bankruptcy estate as the estate would avoid having to obtain renewals of its contracts.

ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to Court approval, provided the defaults under such contracts and leases are cured and adequate assurance of future performance are provided. Courts evaluate this standard by determining whether an executory contract or unexpired lease may be assumed is the debtor's "business judgment" that the assumption is in its economic best interests. *See, e.g. Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing the business judgment test as "traditional"). The Debtor has evaluated the financial wherewithal of the Purchaser, and, in exercising its sound business judgment, believes that selling its assets, and assuming and assigning the contracts to the Purchaser, would be in the best interests of the Debtor's estate and creditors.

This sale includes the sale of government contracts. While government contracts can be subject to restrictions on assignment, those restrictions do not apply here when the transfer is occurring due to the sale of all of a company's material assets. *Lyons Sec. Servs., Inc. v. United States*, 38 Fed. Cl. 783, 786 (1997) ("The GAO has held that '[w]here the transfer is incident to

the sale of an entire business, the transfer is considered to have occurred 'by operation of law,' and the assignment is exempted from the anti-assignment statute.") *citing McNeil Technologies, Inc.*, 94–1 C.P.D. ¶ 40, at 7 (1994); *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 84 Fed. Cl. 768, 777 (2008) ("Where a transfer is incident to the sale of an entire business or the sale of an entire portion of a business, . . . the assignment is exempted from the anti-assignment statute.").[1]

Here, the Debtor is selling all of its material assets as well as all of its valuable contracts assets, which constitutes the sale of an entire business or entire portion of a business. The sale of the government contracts is thus exempt from any restriction on assignment. In the alternative, the Bankruptcy Court should approve the assumption and assignment of the contracts, subject to applicable non-bankruptcy law, including any requirement for the government to approve novation of one or more of the contracts.

WAIVER OF STAY PURSUANT TO RULE 6004(h)

Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property is stayed for a period of 14 days unless the Court orders otherwise. Here, the Debtors believe the Court should order a waiver of the stay. Under the terms of the Asset Purchase Agreement, the sale must close on or before December 31, 2019. The Purchaser has represented that it is unwilling to complete the sale after that date. As a result, it is necessary for any approved sale to close immediately after the sale hearing to prevent the loss of the assets sold.

---

[1] Exempt transfers include sales of contracts through bankruptcy. *See L-3 Commc'ns*, 84 Fed. Cl. At 777 fn. 14 ("The Supreme Court has also long considered the 'operation of law' exception to include transfers as a result of bankruptcy, assignments of claims to a receiver under the order of a court and voluntary assignments of an insolvent debtor's assets for the benefit of his or her creditors.") (string cite omitted).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) granting the Motion; (ii) authorizing the sale pursuant to the terms of the Asset Purchase Agreement; (iii) approve the sale free and clear of liens, claims, encumbrances, and interests; (iv) approve the assumption and assignment of contracts; (v) waive the 14 day stay provided by Rule 6004(h); (vi) authorize the Debtor to take all necessary and reasonable actions to consummate the sale; and (vii) granting such other and further relief as the Court deems just and proper.

Dated:  December 16, 2019                                Respectfully submitted,

    /s/ *Bradley D. Jones*
**ALEXANDER M. LAUGHLIN (VSB No. 25237)**
**BRADLEY D. JONES (VSB No. 85095)**
**ODIN FELDMAN & PITTLEMAN PC**
**1775 Wiehle Avenue, Suite 400**
**Reston, Virginia 20190**
**Laughlin: 703-218-2134**
**Jones:   703 218-2176**
**Fax:     703-218-2160**
**Email:  alex.laughlin@ofplaw.com**
**Email:  Brad.Jones@ofplaw.com**

*Counsel for the Debtor and Debtor-in-Possession*

#4484685v2  088398/000002