**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| **ABRAMS LEARNING AND** | * | **Case No. 19-10725-KHK** |
| **INFORMATION SYSTEMS, INC.,** | * | Chapter 11 |
| | * | |
| Debtor. | * | |

**DEBTOR'S MOTION TO DISMISS CHAPTER 11**
**CASE AND APPROVE PROPOSED DISTRIBUTION**

Abrams Learning and Information Systems, Inc., (the "**Debtor**" or "**ALIS**") hereby requests the entry of an order dismissing this case under 11 U.S.C. §§ 305(a) and 1112(b) and to authorize the Debtor to distribute funds remaining in the Debtor's possession to creditors in accordance with the priority scheme. The Motion is filed pursuant to 11 U.S.C. §§ 105(a), 305(a)(1), 349(b), 363(b), 507(a), 1112(b) and Rules 1017, 6004(a), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). In support of this Motion, the Debtor represents as follows:

**FACTUAL SUMMARY**

1.      The Debtor is a consulting firm that is a recognized leader in developing and delivering training, planning, and doctrine programs for government clients in homeland security, emergency management, military, academia, and other commercial enterprise platforms.

**ALEXANDER M. LAUGHLIN (VSB No. 25237)**
**BRADLEY D. JONES (VSB No. 85095)**
**ODIN FELDMAN & PITTLEMAN PC**
**1775 Wiehle Avenue, Suite 400**
**Reston, Virginia 20190**
**Laughlin: 703-218-2134**
**Jones:     703 218-2176**
**Fax:       703-218-2160**
**Email:    alex.laughlin@ofplaw.com**
**Email:    Brad.Jones@ofplaw.com**

*Counsel for the Debtor and Debtor-in-Possession*

2.      The Debtor was founded in 2004 and is a Virginia Corporation headquartered in Annandale, Virginia.

3.      The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on March 7, 2019.

4.      During the chapter 11 case, the Debtor entered into two asset purchase agreements, which were approved by this Court, and resulted in the sale of all of its assets.

### The Gotham Sale Motion

5.      On December 16, 2019, the Debtor filed a Motion To Approve Assumption And Assignment Of Contracts And Sale of Assets Free And Clear Of Liens, Claims, And Interests to Gotham Government Services, LLC ("**GGS**"). Dkt. No. 124. That motion (the "**Gotham Sale Motion**") sought approval of a sale and assignment of the Debtor's assets and contracts, except for one subcontract that the Debtor held with Valiant Global Defense Services, Inc. (the "**Valiant Subcontract**").

6.      The sale of most of the contracts transferred under the Gotham Sale Motion closed on January 2, 2020. However, the Department of the Army required GGS to obtain a facility security clearance prior to the transfer of the contract related to the Department of the Army, Futures and Concepts Center (formerly ARCIC), New Generation Warfare Study Plan and Event Advisors IDIQ (and task orders), (the "**Army Contract**").

7.      As a result, the Debtor and GGS agreed to extend the closing date on the sale of the Army Contract until GGS obtains a facility security clearance or the task orders under the Army Contract are completed, whichever is sooner.

8.      The Debtor is receiving the revenues from that contract and the current task order will be completed in June 2020. The Debtor anticipates that the facility security clearance will be obtained by GGS shortly after the filing of this Motion, but this approval depends on the

response time of the appropriate government agency.

9.      The Debtor received $135,000.00 from GGS for the sale of its contracts and the Debtor's counsel is holding $65,000.00 in escrow, pending closing on the sale of the Army Contract.

<u>The Sale of the Valiant Subcontract</u>

10.      On January 10, 2020, the Debtor entered into an agreement to sell the Valiant Subcontract to Leon Rios ("**Rios**") of Rios Advantage. Dkt. No. 143.

11.      Rios was the independent contractor performing this subcontract with Valiant on behalf of ALIS and was entitled to an administrative claim in the amount of $133,979.44 on account of the assumption of his executory contract at the beginning of the case. *See* Dkt. No. 45 at 2; Dkt. No. 143 at 3.

12.      Pursuant to the sale agreement, the Valiant Subcontract was assumed and assigned to Rios, Rios received a payment of $25,000.00, and ALIS's cure obligations were satisfied.

13.      This Court entered an order approving the sale on January 30, 2020. Dkt. No. 161.

14.      Closing of the Sale of the Valiant Subcontract occurred on January 31, 2020.

15.      With the completion of the sale of the Valiant Subcontract, all of the Debtor's assets are subject to a sale order, with the remaining asset, the Army Contract set to close once the buyer's facility security clearance is obtained.

<u>Tax and Social Security Reporting Requirements</u>

16.      In the course of the Debtor's administration of this bankruptcy case, the Debtor's management discovered a number of pre-bankruptcy tax and reporting obligations were not completed by the Debtor's former Chief Financial Officer, prior to his departure from the company.

17.     On May 20, 2019, the Internal Revenue Service filed an amended proof of claim (the "**IRS Proof of Claim**") in the amount of $166,389.95. Claim 1-2. The IRS Proof of Claim noted that the tax assessment for the years 2013 to 2014 were "estimated" and that there were tax returns that had not been filed for certain periods.

18.     On August 28, 2019, the Virginia Department of Taxation filed Proof of Claim 4-1 asserting a claim in the total amount of $15,006.33.

19.     On September 3, 2019, the Comptroller of Maryland filed Proof of Claim 5-1, asserting a claim in the amount of $79,969.00 for withholding taxes.

20.     In response to the proof of claims filed by the taxing authorities, the Debtor had its accountants prepare and file the outstanding tax forms for the unfiled IRS returns. The Debtor also determined that there were other filing obligations in the pre-bankruptcy period that had not been completed, including tax returns required to be filed with various state taxing agencies and providing copies of W-2s to the Social Security Administration.

21.     On December 12, 2020, the Debtor filed an application to supplement and expand the scope of employment for the Debtor's accountants, Barry Strickland & Company (the "**Accountants**") to enable the Debtor to file and complete all outstanding pre-bankruptcy tax and other reporting obligations. Dkt. No. 122.

22.     The Court entered an order authorizing the Accountants to complete these tax and reporting obligations on January 17, 2020. Dkt. No. 154.

23.     The Accountants have completed the tax reporting for federal returns and filed returns for the unpaid 941 taxes.

24.     On March 16, 2020, in response to the filed returns, the Internal Revenue Service

sent the Debtor notices of unpaid tax balance due.[1] Based on the tax returns filed by the Debtor,

the IRS calculates that the Debtor owes tax liabilities for the 1st Quarter of 2013 in the amount of

$290,188.30; for the Second Quarter of 2013 in the amount of $266,947.68; for the Third

Quarter of 2013 in the amount of $223,997.74; for the First Quarter of 2014 in the amount of

$267,057.31; for the Second Quarter of 2014 in the amount of $398,987.54; and for the Third

Quarter of 2014 in the amount of $420,602.54. Redacted copies of the IRS Notices received by

the Debtor are attached as **Exhibit A**.

25.     In total, the IRS calculates the Debtor's pre-bankruptcy tax liability for 2013 and

2014 to be at least $1,867,781.11, which is significantly greater than the $137,590.15 amount

reflected in the IRS's proof of claim. *See* Claim 1-2.

26.     Of the amounts calculated by the IRS, $1,317,328.35 is tax debt and interest

entitled to priority pursuant to 11 U.S.C. § 507(a)(8)(C). The remaining $550,452.76 represents

penalties assessed for non-pecuniary losses, which are a general unsecured debt.[2]

27.     In addition to these amounts, the Debtor estimates that the IRS is owed additional

amounts for the Fourth Quarter of 2013 and the Fourth Quarter of 2014. The Debtor has not

received a notice from the IRS for these periods but estimates that the IRS is owed an additional

$419,784.11 in priority tax and interest for these periods and approximately $183,607.98 in

penalties, which are a general unsecured liability.

28.     The Debtor is in the process of completing its tax reporting for the various states

in which it operated but may not have filed returns. This has required the Debtor's Accountants

to contact and coordinate with the taxing authorities in each of at least 13 jurisdictions (Arizona,

Colorado, District of Columbia, Hawaii, Indiana, Kansas, Massachusetts, Maryland, Missouri,

---

[1] These notices were sent on IRS Form CP161, which is an IRS calculation of the unpaid tax balance owed by a taxpayer after the IRS has received a filed return.
[2] Tax penalties are only given priority if the penalties are assessed to compensate the government for an actual pecuniary loss. *See* 11 U.S.C. § 507(a)(8)(G).

Virginia, West Virginia, Texas, Florida).

29.     Based on the Debtor's books and records, the Debtor estimates that it owes priority tax obligations for unfiled withholding obligations to Maryland in the amount of $75,183.00; Kansas in the amount of $156,047.00; the District of Columbia in the amount of $32,461.57; and Hawaii in the amount of $8,856.76.[3] The Debtor does not believe it owes any tax obligations to any other state jurisdictions but is working with its Accountants to ensure all returns have been filed and there are no other priority tax obligations owing.

30.     The Accountants anticipate it will take several months to finalize the returns for all of these jurisdictions and to obtain notices from all the state jurisdictions including the taxing authority's calculation of any tax or interest owing.

31.     The Debtor is currently holding cash in the amount of $467,570.67. The priority liabilities exceed the remaining assets of the Debtor. As a result, the Debtor would be unable to satisfy the requirement in 11 U.S.C. § 1129(a)(9)(C) to pay the priority tax debts in full within five years.

32.     In addition, the IRS has indicated that the Debtor's post-petition operations may have generated unpaid taxable liabilities in the amount of approximately $40,907.73. *See* Exhibit A at 37.

33.     The Debtor is an S-Corporation with its profits and losses reported on the Schedule E of the return of the shareholder. The sole shareholder is the estate of its deceased shareholder, General John N. Abrams (the "**Decedent's Estate**").

34.     The Debtor believes it is appropriate for this Court to allow the Debtor to make a distribution in the amount of the Debtor's estimated tax liability of to allow the estate to pay the

---

[3] In addition, the Debtor owes unemployment insurance taxes in the amount of $12,923.39 to the Kansas Department of Labor and $51.49 to Workforce West Virginia, which are general unsecured claims. *In re Hansen*, 470 B.R. 535 (B.A.P. 9th Cir. 2012).

tax obligations generated by the Debtor's post-petition operations. The Decedent's Estate is otherwise insolvent and so if this distribution is not authorized, the taxing authorities will not receive payment on account of the taxable income generated in this bankruptcy.

### Proposed Distribution

35.     The Debtor has prepared a proposed distribution (the "**Distribution**"). Under that Distribution, all the Debtor's cash resources, which are the sole remaining asset of the Debtor, would be used to make payments to creditors once the closing of the sale of the Army Contract occurred. The administrative claims would be paid in full. The priority creditors would be paid pro-rata. A copy of the Distribution with estimated amounts to be paid to claims holders is attached as **Exhibit B**.

36.     With its current cash reserves, the Debtor estimates that the priority claim holders will receive approximately 13 cents on the dollar on account of their priority claims. This amount may be higher or lower depending on the amount of the allowed administrative claims, the final calculation of the priority claims, and potential additional funds the Debtor receives pending closing on the sale of the Army Contract less any expenses incurred in operating this contract pre-closing.

### U.S. Trustee Fees

37.     The Debtor believes there are no issues with the payment of administrative and priority claims in accordance with the proposed distribution.[4] However, the Debtor and the U.S Trustee have been discussing the proper calculation of the quarterly U.S. Trustee fees, which

---

[4] One of the priority wage claims filed in the case sought a priority wage claim in the amount of $13,650.00. Claim 3-1 at 3. However, the maximum priority wage claim amount available under 11 U.S.C. § 507 is $12,850.00. The periodic adjustment to the statutory amount provided in § 507 to $13,650.00 only applied to cases filed on or after April 1, 2019. *See* "Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code," 84 FR 3488, ¶(c) (Feb. 12, 2019) ("Adjustments made in accordance with subsection (a) shall not apply with respect to cases commenced before the date of such adjustments."). Because this case was filed on March 7, 2019, the maximum priority claim available is $12,850.00 pursuant to 11 U.S.C. § 507(a)(4).

remains unresolved.

38.     The Debtor was the prime contractor with respect to a contract that was a "100% pass-through" contract with a subcontractor. "100% pass-through" is a term of art in government contracting, which describes the amount of labor performed on the task order by the subcontractor. All of the funds paid on this contract belonged to the subcontractor that performed the work, except for a small administrative fee. Similarly, after the closing of the sale to Gotham Government Services, one of the contracts purchased by GGS, a contract with the Veterans Benefits Administration ("**VBA**") had a delay in switching the billing information from the Debtor to GGS, even though all of the post-closing revenues belonged to GGS under the purchase agreement. As a result, certain monies were paid by the government to the Debtor, which immediately transmitted all of those funds to GGS.

39.     In the Debtor's view, neither of these two relationships, in which funds that the Debtor did not own were turned over to their proper owners,[5] are includable in the fee calculation. In both instances, the funds at issue are not property of the Debtor's bankruptcy estate. *See In re Meyer*, 187 B.R. 650 (Bankr. W.D. Mo. 1995) (recognizing that the U.S. Trustee fee calculation can only be assessed on disbursements of property of the debtor's estate).

40.     On October 9, 2019, the Debtor through counsel sent the U.S. Trustee a letter at his request, providing the Debtor's analysis of the issues involved. The Debtor understood that the U.S. Trustee would seek further guidance from the Executive Office of the United States Trustee on the issue. At this time, the Debtor has not received an update regarding the U.S. Trustee's position.

41.     As a result, the Distribution reflects the calculation of the U.S Trustee fees owed

---

[5] The Debtor has included and paid quarterly fees on the monies that the Debtor received as an administrative fee as well as all monies disbursed from funds it received pursuant to work it performed on its government contracts.

based on the current guidance the Debtor received.[6] To the extent the U.S. Trustee files a written

objection asserting a different calculation, the Debtor anticipates accommodating the U.S.

Trustee's position. Pursuant to 28 U.S.C. § 1930(a)(6)(A), quarterly fee payments are paid to the

U.S. Trustee for deposit in the United States Treasury. Under the Distribution, federal and state

taxing authorities are receiving over 97.9% of the payments to priority claims holders. So

regardless of whether the funds are paid to the U.S. Treasury by the United States Trustee or the

Internal Revenue Service, the economic result appears to be substantially identical.

### RELIEF REQUESTED

By this Motion, the Debtor seeks to dismiss this chapter 11 case and authorize the Debtor

to make a liquidating distribution pro rata to creditors in accordance with the priority scheme.

Through prior sale agreements approved by this Court, the Debtor has sold or entered into

contracts to sell all of its assets. The Debtor has analyzed the claims listed on its Schedules and

the proofs of claims filed in this case. As a result, the only remaining item in the case is to make

payment to creditors through a liquidating distribution.

The proposed Distribution contemplates paying the allowed claims pro-rata pursuant to

the Bankruptcy Code's priority scheme. Payments of the Debtor's available cash will be made in

accordance to the Distribution. The Debtor requests that this Court enter an order (the "**Proposed

Distribution Order**") approving the Distribution. A copy of the Proposed Distribution Order is

attached hereto as **Exhibit C**.

For administrative convenience and to conserve expenses, the Debtor intends to make one

distribution from its debtor-in-possession bank account. The Distribution will occur once the sale

of the Army Contract closes or all revenue on that contract is received by the Debtor, whichever

---

[6] Including the pass-through payments in the U.S. Trustee fee calculation would increase the quarterly fee
under the distribution by about $21,157.00 and decrease the funds available to pay priority creditors.

occurs first. The Debtor anticipates utilizing the services of its Financial Advisor, Arnold Financial Consulting, LLC, d/b/a Marcher Consulting ("**Marcher Consulting**"), to act as Distribution Agent (the "**Distribution Agent**") to oversee and complete the proposed payments to creditors. Marcher Consultants has estimated that it may cost up to $50,000.00 to complete all services in connection with its role as Distribution Agent.

The Debtor also requests as part of the Proposed Distribution Order that after a distribution occurs, any distributed check(s) that have not been claimed and/or cashed within a ninety-day period from the date of the check shall be deemed void. To the extent any funds remain due to uncashed checks, those funds will be paid pro-rata to the remaining unpaid creditors in the highest remaining unpaid class. In addition, the Debtor recognizes that the amounts listed in the proposed Distribution could change, for example, if it is determined that additional creditors should have been included, if additional information is received regarding the priority tax claim amounts, or if the Debtor receives additional funds from the closing of the sale of the Army Contract.

## APPLICABLE AUTHORITY

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicate for the relief requested herein is §105(a) of the Bankruptcy Code.

Dismissal of the Case and Distribution of the Remaining Funds is in the Best Interest of the Debtor's Creditors and the Bankruptcy Estate.

The Court should dismiss the Debtor's case under sections 305(a) and 1112(b) of the Bankruptcy Code and authorize the Debtor to distribute the funds remaining in the Estate Account to the Debtor's creditors. The Debtor is unable to effectuate a plan of reorganization,

and distribution of funds to the Debtor's creditors as contemplated by this Motion is in the best interest of the Debtor's estate.

Under section 305(a)(1) of the Bankruptcy Code, the Court may dismiss a case or suspend proceedings at any time if "the interests of creditors and the debtor would be better served by such dismissal or suspension." Similarly, under 11 U.S.C. § 1112(b), a court may dismiss a debtor's chapter 11 case "for cause." 11 U.S.C. § 1112(b); *See In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Blunt*, 236 B.R. 861, 864 (Bankr. M.D. Fla. 1999).

A determination of cause is made by the court on a case-by-case basis. *See Albany Partners*, 749 F.2d at 674. A finding of cause is delegated to the bankruptcy court's sound discretion. *See In re Camden Ordinance Mfg. Co. of Arkansas, Inc.*, 1999 WL 587790, at *2 (Bankr. E.D. Pa. 1999) *citing In re Atlas Supply Corp.*, 837 F.2d 1061, 1063 (5th Cir. 1988). Therefore, it is clear that the Court is authorized to dismiss the Debtor's chapter 11 bankruptcy case upon a showing of "cause."

The legislative history of section 1112(b) of the Bankruptcy Code indicates that a court has wide discretion to use its equitable powers to dispose of a debtor's case. H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), reprinted in 1978 U.S.C.C.A.N. 57878; *see also In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (stating a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating that determination of whether cause exists under section 1112(b) of the Bankruptcy Code "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.1d 1358, 1367 & n. 7 (5th Cir. 1986) (stating that a bankruptcy court is afforded "wide discretion" under section 1112(b) of the Bankruptcy Code); *Albany Partners*, 749 F.2d at 674. For reasons more fully explained below, the Court should use

its grant of broad authority to dismiss the Debtor's chapter 11 bankruptcy case and to authorize

the Debtor to distribute the funds remaining in its possession to its creditors as contemplated by

this Motion.

Section 1112(b) of the Bankruptcy Code provides a nonexclusive list of grounds for

dismissal. *Frieouf v. U.S.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b) of

the Bankruptcy Code's list is nonexhaustive). One such ground is where a party-in-interest

shows that there is an inability to effectuate a plan of reorganization. 11 U.S.C. § 1112(b)(4)(M);

*Preferred Door Co.*, 990 F.2d at 549; *Sullivan Cent. Plaza I*, 935 F.2d at 728. Here, the Court

may dismiss the Debtor's chapter 11 bankruptcy case because it has been reasonably shown that

the Debtor is unable to effectuate a plan.

Inability to effectuate a plan arises when a debtor lacks the capacity to "formulate a plan

or carry one out" or where the "core" for a workable plan of reorganization "does not exist." *See*

*Preferred Door*, 990 F.2d at 549 *quoting Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)

(finding an inability to effectuate a plan arises where debtor lacks capacity to formulate a plan or

carry one out).

In this case, it is not possible for the Debtor to effectuate a plan of reorganization because

the Debtor has liquidated all of its assets. The Debtor has entered into contracts with Gotham

Government Services and Rios Advantage, which has disposed its remaining assets and

executory contracts. As such, there is no business to reorganize. In addition, when the Debtor

corrected unmet tax filing and other reporting obligations, it became clear that the Debtor would

be unable to propose a plan that would meet the confirmation requirements in 11 U.S.C. § 1129.

The IRS calculates that the Debtor owes over $1.3 million in priority taxes, which must be repaid

over 5 years pursuant to meet the plan confirmation requirement in 11 U.S.C. § 1129(a)(9)(C).

The amount of the priority tax liabilities exceed the Debtor's remaining assets, so the Debtor is

unable to meet this plan confirmation requirement. As a result, the best outcome is to distribute

the remaining assets so that as much of these unpaid liabilities as possible are paid.

In sum, the Debtor has met its burden of proof that the Debtor's chapter 11 bankruptcy

case should be dismissed under § 1112(b) of the Bankruptcy Code due to the inability to

effectuate a plan of reorganization.

The Best Interests of Creditors is Served by a Liquidating Distribution.

Once a court determines that cause exists to dismiss a chapter 11 case, the court evaluates

whether dismissal is in the best interests of the creditors and of the estate. *See In re Superior*

*Sliding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzaoone*, 185 B.R. 402, 411

(Bankr. E.D. Pa. 1995), *aff'd* 200 B.R. 568 (E.D. Pa. 1996); *In re Warner*, 83 B.R. 807, 809

(Bankr. M.D. Fla. 1988).

A variety of factors demonstrates that it is in the best interest of the creditors and the

Debtor's estate to dismiss the chapter 11 case and authorize distribution of the funds remaining

in the Debtor's possession to its creditors as contemplated by the Motion.

First, a dismissal of a chapter 11 bankruptcy case meets the best interests of the creditors

test where a debtor has nothing to reorganize, and the debtor's assets are fixed and liquidated.

*See In re BTS, Inc.*, 247 B.R. 301, 310 (Bankr. N.D. Okl. 2000); *In re Camden Ordinance Mfg.*

*Co. of Arkansas, Inc.*, 245 B.R. 794, 799 (E.D. Pa. 2000) (finding that a reorganization to salvage

business which ceased business was infeasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549

(Bankr. N.D. Ga. 1982) (dismissing a chapter 11 bankruptcy proceeding in part where there was

"simply nothing to reorganize" and no reason to continue the reorganization). As explained

above, the Debtor has nothing left to reorganize. As of the date of this Motion, the assets of the

Debtor's estate are fixed and liquidated or subject to the terms of an approved sale. The only

action remaining on the part of the Debtor is to distribute such funds to its creditors. Thus, it is in

the best interest of the creditors to dismiss the Debtor's chapter 11 bankruptcy case because the Debtor's operations no longer exist, and the Debtor's fixed, liquidated assets are available for distribution to the Debtor's creditors.

Further, the best interests of the creditors test is met where a debtor demonstrates the ability to oversee its own liquidation. *See Camden Ordinance Arkansas, Inc.*, 245 B.R. at 798; *Mazzozone*, 183 B.R. at 412 (stating that "[o]nly when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation… should a debtor be permitted to remain in bankruptcy"). Here, the Debtor has successfully overseen the sale of its assets, is confident that all of its material assets have been liquidated, and that there is nothing further to pursue. The element of the best interest of the "estate" focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. *See In re Clark*, 1995 WL 495951, at 5 (N.D. Ill. 1995); *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1993). The prime criterion for assessing the interests of the estate is the maximization of its value as an economic enterprise. *See id*. Here, dismissal of the Debtor's case will maximize the estate's value, because the alternative, conversion to a chapter 7 liquidation and appointment of a trustee, is unnecessary and would impose significant additional administrative costs upon the Debtor's estate. Dismissal of the Debtor's chapter 11 bankruptcy case is preferred in this instance because the Debtor has only one remaining relatively simple administrative duty – distribution of funds to the Debtor's creditors.

The alternative to dismissal is to convert the Debtor's bankruptcy case to a chapter 7 liquidation and appoint a trustee. However, a conversion to chapter 7 and the appointment of a trustee would simply lead to increased costs and a delay in the distribution. The Debtor submits that it has demonstrated that the creditors and the estate will be best served if the Debtor's case is dismissed. The Debtor seeks this Court's approval to complete an orderly liquidation of its

remaining cash in accordance with the distribution scheme. In order to maximize the return to creditors, and to expedite the distribution, the Court should dismiss the Debtor's chapter 11 bankruptcy case and authorize the Debtor to distribute the funds remaining in their possession to the estate's creditors.

CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) granting the Motion; (ii) authorizing the distribution proposed by the Debtor; (iii) dismissing the case and entering a final decree upon the submission of a certification by the Debtor; and (vii) granting such other and further relief as the Court deems just and proper.

Dated:  April 2, 2020                                   Respectfully submitted,


                                                          /s/ *Bradley D. Jones*
                                                         **ALEXANDER M. LAUGHLIN (VSB No. 25237)**
                                                         **BRADLEY D. JONES (VSB No. 85095)**
                                                         **ODIN FELDMAN & PITTLEMAN PC**
                                                         **1775 Wiehle Avenue, Suite 400**
                                                         **Reston, Virginia 20190**
                                                         **Laughlin: 703-218-2134**
                                                         **Jones:   703 218-2176**
                                                         **Fax:     703-218-2160**
                                                         **Email:  alex.laughlin@ofplaw.com**
                                                         **Email:  Brad.Jones@ofplaw.com**

                                                         *Counsel for the Debtor and Debtor-in-Possession*


#4584266v1   088398/000002